**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
Matthew Daidola, Esq.
205 E Main Street, STE 3-4
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
matthew@talegalgroup.com
*Attorney for Plaintiff Siavash Bahreini and theClass*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SIAVASH BAHREINI *on behalf of himself and the Class*<br><br>Plaintiff,<br><br>- against -<br><br>UNITED AIRLINES HOLDINGS, INC.,<br><br>Defendant. | **Case No.:**<br><br>**CLASS COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Siavash Bahreini ("Plaintiff or "Mr. Bahreini"), on behalf of himself and Rule 23 Class Members, by and through his undersigned counsel of record, TA Legal Group PLLC, hereby files this Federal Class Complaint ("Complaint") against Defendant United Airlines Holdings Inc., ("referred to herein as "Defendant" or "United"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this civil rights action to hold Defendant accountable for its systemic failure to provide equal access to its services, facilities, and digital infrastructure. This action arises from Defendant's operation of an inaccessible website and a subsequent, flagrant failure by its personnel to provide reasonable accommodations. These failures resulted in actual

financial harm, profound emotional distress, and a discriminatory limitation on Plaintiff's fundamental right to travel.

2. Plaintiff is a visually disabled individual who is legally blind. To navigate his physical environment and maintain his independence, Plaintiff utilizes a certified service animal (a "seeing-eye dog"). To navigate the digital space, Plaintiff relies on standard-market screen-reading software.

3. Defendant is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business and corporate headquarters located in Chicago, Illinois. At all times relevant, Defendant owned, operated, and controlled a commercial air carrier.

4. Accordingly, Defendant is a "public accommodation" and a "place of public accommodation" subject to the strictures of the Americans with Disabilities Act (ADA), the Air Carrier Access Act (ACAA), and all other applicable federal and state civil rights statutes.

5. As a direct result of his disability, Plaintiff requires reasonable accommodations to access public services, specifically air travel. This action seeks to address a pattern of discriminatory practices and a lack of meaningful accessibility within Defendant's operational framework.

**<u>CLAIMS</u>**

6. Plaintiff seeks recovery under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181 et seq., that he was discriminated against based on a disability and is entitled to compensatory damages, emotional distress damages, punitive damages, and statutory penalties.

7. Plaintiff further alleges, pursuant to the Air Carrier Access Act ("ACAA") 49 U.S.C. § 41705; 14 C.F.R. Part 382, that Defendants failed to provide him with access to air

transportation and related services and is entitled to equitable and injective relief, consequential damages, and compensatory damages.

8. Plaintiff further alleges, pursuant to New Jersey Law Against Discrimination ("NJLAD") N.J. Stat. Ann. § 10:5-12 et seq., that Defendant prohibited him from a public accommodation and is therefore entitled to compensatory damages, emotional distress, punitive damages, statutory penalties as prescribed by N.J. Stat. Ann. § 10:5-14.1a, and reasonable attorneys' fees and costs.

9. Plaintiff further alleges, pursuant to common law negligent misrepresentation, Defendant made material representations that he would receive assistance with required forms and is therefore entitled to reliance damages, loss of use damages, and consequential damages.

**JURISDICTION, VENUE AND PRE-CONDITIONS TO SUIT**

10. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331**,** 42 U.S.C. § 12181 et seq., and 49 U.S.C. § 41705.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims, including the NJLAD, N.J. Stat. Ann. § 10:5-12 et seq., pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims that they form part of the same case.

12. This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business within the State of New Jersey, maintains a significant hub of operations at Newark Liberty International Airport, and the specific discriminatory acts and omissions giving rise to this Complaint occurred within this District.

13. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving forth to the claims occurred in this District, specifically, the refusal of accommodation and discriminatory conduct experienced by Plaintiff at Newark Liberty International Airport.

## PARTIES

### PLAINTIFF

14. Plaintiff resides in Hudson County, New Jersey.

15. Plaintiff is a "qualified individual with a disability" as defined by the ADA, 42 U.S.C. § 12102, and the NJLAD, N.J. Stat. Ann. § 10:5-5(q)

16. Plaintiff is "legally blind" and suffers from a permanent visual impairment that substantially limits his major life activities, including the ability to see and navigate his environment independently. Due to his disability, Plaintiff requires the use of a certified seeing-eye dog for physical mobility and relies on screen-reading software for digital access and communication.

### DEFENDANT

17. Defendant, is a foreign business corporation organized and existing under the laws of the State of Delaware, with its corporate headquarters and principal place of business located at 233 South Wacker Drive, Chicago, Illinois 60606.

18. At all times relevant to this action, Defendant was, and remains, a "public accommodation" within the meaning of the ADA, 42 U.S.C. § 12181(7), including as a provider of "specified public transportation" operating a place of public accommodation.

19. Defendant is an "air carrier" subject to the mandates of the ACAA, 49 U.S.C. § 41705, and its implementing regulations, 14 C.F.R. Part 382, which strictly prohibit discrimination against individuals with disabilities in the provision of air transportation.

20. Defendant owns, operates, manages, and controls a commercial aviation enterprise that includes a significant physical presence within the State of New Jersey, specifically at Newark Liberty International Airport (EWR), where it maintains ticket counters, departure gates, and customer service facilities.

21. Defendant also owns, operates, and maintains a digital presence via its website, United.com ("Website"), which serves as a primary portal for the public to access Defendant's goods, services, privileges, and advantages, including the mandatory registration of service animals.

22. At all times mentioned herein, Defendant acted by and through its agents, servants, and employees, each of whom was acting within the course and scope of their employment and under the direct supervision and control of Defendant.

23. Defendant is responsible for the policies, practices, and procedures of United, as well as the design and maintenance of its Website. Defendant is vicariously liable for the discriminatory acts, omissions, and negligent misrepresentations of its personnel under the doctrine of *respondeat superior*.

## STATEMENT OF FACTS

### The Prevalence of Visual Disabilities and the Necessity of Digital Access

24. According to the U.S. Commission on Civil Rights, "legal blindness" is defined by a visual acuity of 20/200 or worse in the better eye. Approximately 1.1 million Americans meet this criteria. Furthermore, data from the 2020 United States Census Bureau indicates that approximately 8.18 million Americans, roughly 2.5% of the total population, suffer from a visual disability.

25. In the New York-New Jersey metropolitan area, these figures are even more pronounced. A 2021 risk analysis conducted by the New York State Department of Health concluded that 5.2% of New Yorkers live with a visual disability, representing a significant portion of Defendant's consumer base.

26. In the modern era, the internet serves as a critical gateway for essential daily activities, including commerce, education, banking, and, relevant to this action, the procurement

of transportation services. Furthermore, access to the internet is no longer a luxury, it is a fundamental tool for independent living for sighted and visually impaired persons alike.

27. Individuals with visual disabilities, such as the Plaintiff, access digital content through the use of keyboards paired with screen-access software (commonly referred to as "screen-readers"). This technology vocalizes visual information or translates it into a refreshable Braille display. For the blind, screen-reading software is the exclusive means by which they may independently navigate the digital world.

28. For such software to function, a website's architecture must be designed so that all content is capable of being rendered into text. If a website is not constructed to be compatible with these programs, the visually impaired are effectively barred from the services, information, and benefits offered to the sighted public.

**Plaintiff's Use of Assistive Technology**

29. Plaintiff is a visually disabled individual who is legally blind. To maintain his mobility and safety, Plaintiff utilizes a certified seeing-eye dog. To maintain his digital independence, Plaintiff utilizes industry-standard assistive technologies.

30. At all relevant times, Plaintiff accessed the internet through three primary devices: a computer utilizing a Windows operating system, and an Apple iPhone and iPad both utilizing the iOS operating system.

31. To interface with these devices, Plaintiff utilized the most prevalent and commercially accepted screen-reading programs: (1) Job Access With Speech ("JAWS"), (2) Non-Visual Desktop Access ("NVDA"), and (3) Apple's VoiceOver.

**Defendant's Inaccessible Website and Discriminatory Conduct**

32. Defendant operates a major international air carrier providing extensive services through hubs including Newark Liberty International Airport (EWR), LaGuardia Airport

(LGA), and John F. Kennedy International Airport (JFK).

33. Defendant mandates that any traveler intending to fly with a service animal must complete and submit specific electronic registration forms prior to departure. These forms are hosted exclusively on Defendant's website. There is no accessible alternative.

34. In June 2022, Plaintiff attempted to book a flight to Toronto, Canada. Plaintiff intended to travel with his seeing-eye dog, a black Labrador Retriever named Shadow. While Plaintiff was able to select a flight, he was prevented from completing the mandatory service animal registration because Defendant's website was, and remains, incompatible with JAWS, NVDA, and VoiceOver software.

35. This digital barrier created an immediate safety risk. Traveling without Shadow's assistance would subject Plaintiff to disorientation and physical peril in an unfamiliar international environment.

**Defendant's Failure to Provide Reasonable Accommodations**

36. Seeking to resolve this barrier, Plaintiff contacted Defendant's customer service line. Rather than providing a reasonable accommodation, Defendant's agents proposed offensive and degrading "solutions," such as asking Plaintiff: *"Do you have anyone that lives with you to help?"* and *"Do you have a neighbor to help?"*

37. By suggesting that Plaintiff rely on the charity of neighbors or housemates, Defendant sought to deprive Plaintiff of his right to privacy and his fundamental autonomy, effectively treating him as a second-class citizen incapable of managing his own affairs.

38. Defendant further suggested that Plaintiff's veterinarian complete the forms. When Plaintiff insisted on an alternative that did not involve third-party intervention, Defendant's agents instructed him to physically travel to an airport service desk, where a United employee would purportedly provide assistance.

39. At great personal inconvenience, Plaintiff took time off from work and traveled to Newark Liberty International Airport airport. Upon his arrival, a United ticketing agent summarily rejected his request, stating that the instructions provided by Defendant's own customer service department were "not United's policy." No further assistance or accommodation was offered.

40. Left with no other recourse to secure his right to travel, Plaintiff went to AMC Schwarzman Animal Medical Center in New York City. Plaintiff was compelled to pay a fee to his veterinarian to complete the administrative tasks that Defendant's website and staff refused to facilitate.

**Systemic Impact and Harm**

41. The financial costs, lost time, and logistical burdens incurred by Plaintiff were directly and proximately caused by Defendant's failure to maintain an accessible digital interface and its refusal to provide a viable accommodation.

42. Upon information and belief, Plaintiff is not alone in this experience. Other similarly situated blind travelers have reported a consistent pattern of encountering inaccessible forms, unhelpful or derogatory customer service, and a total lack of meaningful accommodation by Defendant.

43. This systemic failure reflects a broader culture of discrimination within United, wherein the needs of the visually impaired are treated as an afterthought rather than a legal obligation.

44. As a direct result of these discriminatory practices, Plaintiff has been forced to limit his travel, significantly impacting his quality of life, his professional opportunities, and his personal independence. Plaintiff seeks redress for the violation of his civil rights, the humiliation of being denied equal access, and the emotional distress and anxiety caused by

Defendant's illegal and exclusionary conduct.

45. Plaintiff retained TA Legal Group PLLC as counsel to represent Plaintiffs and similarly situated Class members in this litigation and agreed to pay a reasonable fee for its service.

## CAUSES OF ACTION

### COUNT I - VIOLATIONS OF TITLE III OF THE ADA (42 U.S.C. § 12181 et seq.) Defendant Failed to Provide Reasonable Accommodations to Plaintiff and Class in a Place of Public Accommodation

46. Plaintiff realleges and incorporates by reference all preceding paragraphs.

47. Under Title III of the ADA, no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. § 12182(a). Defendant's website is a "service" and a "privilege" of its public accommodation, yet it contains digital barriers that deny Plaintiff the same "full and equal enjoyment" afforded to sighted passengers.

48. Federal courts have increasingly recognized that the ADA extends to the digital infrastructure of places of public accommodation. In *Gil v. Winn-Dixie Stores, Inc.*, 242 F. Supp. 3d 1315 (S.D. Fla. 2017), the court held that a website constitutes a "service" of a public accommodation and must be accessible where it is heavily integrated with a retailer's physical locations.

49. Likewise, in *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381 (E.D.N.Y. 2017), the Eastern District of New York held that a retailer's website itself may qualify as a place of public accommodation under the ADA, rejecting the argument that a physical nexus is required. Together, these decisions reflect a clear trend toward recognizing that digital platforms must be accessible when they serve as gateways to a business's goods or services.

50. Defendant further violated 42 U.S.C. § 12182(b)(2)(A)(ii) by failing to make reasonable modifications to its policies, practices, and procedures. When Plaintiff informed Defendant that its digital interface was inaccessible, Defendant had a non-delegable duty to provide an alternative method of registration that did not compromise Plaintiff's privacy or autonomy.

51. Defendant's suggestion that Plaintiff "ask a neighbor" or pay a veterinarian to overcome barriers created by its inaccessible website violates the ADA's mandates of effective communication and reasonable modification. Title III requires public accommodations to provide equal access through appropriate aids and services, not to shift that burden onto individuals with disabilities.

52. Courts have rejected "workarounds" that impose additional burdens on individuals with disabilities. See *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 907 (9th Cir. 2019) (rejecting a telephone hotline as an adequate substitute for an accessible website). Courts within the Second Circuit have likewise recognized that Title III requires equal access to the goods and services of a public accommodation, including in the digital context. See *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 398–400 (E.D.N.Y. 2017) (holding that a retailer's website may constitute a place of public accommodation), and *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744, 2017 WL 6547902, at *10–11 (S.D.N.Y. Dec. 20, 2017) (rejecting arguments that online barriers fall outside the ADA's scope).

53. Accordingly, as a direct and proximate result of Defendant's failure to maintain an accessible website and its refusal to provide a reasonable accommodation, Plaintiff has been denied the benefits of Defendant's services and has suffered a profound loss of independence. Plaintiff is entitled to injunctive relief and reasonable attorney's fees under 42 U.S.C. § 12188.

**COUNT II - VIOLATIONS OF ACAA (49 U.S.C. § 41705; 14 C.F.R. Part 382)**

**Defendant Denied Plaintiff the Benefit of Air Transportation**

54. Plaintiff realleges and incorporates by reference all preceding paragraphs.

55. The ACAA and its implementing regulations, specifically 14 C.F.R. § 382.43, mandate that primary websites of air carriers must be accessible to individuals with disabilities. Defendant's failure to provide an accessible service-animal registration form is a per se violation of this federal safety and accessibility standard.

56. Furthermore, 14 C.F.R. § 382.11 prohibits carriers from "excluding a qualified individual with a disability from or denying the individual the benefit of any air transportation or related services." By forcing Plaintiff to visit an airport service desk only to have assistance refused, Defendant denied Plaintiff the "related services" necessary to facilitate his international travel.

57. While courts have debated the scope of a private right of action under the ACAA, earlier decisions recognized that the statute protects disabled passengers from discriminatory and degrading treatment. See *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 800 (5th Cir. 1991); *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 570 (8th Cir. 1989).

58. More recently, the Second Circuit has clarified that the ACAA does not provide a private right of action for damages, leaving enforcement primarily to the Department of Transportation. See *Lopez v. JetBlue Airways*, 662 F.3d 593, 596–97 (2d Cir. 2011). Nonetheless, the statute's core mandate remains that airlines must provide nondiscriminatory, dignified, and accessible service, standards Defendant failed to meet here.

59. Defendant's agents at Newark Liberty International Airport were required by 14 C.F.R. § 382.151 to provide a "Complaint Resolution Official" (CRO) to handle Plaintiff's accessibility dispute. No such official was offered, and the ticketing agent's refusal to assist Plaintiff constitutes a breach of the mandatory duty of care established by federal aviation law.

60. Accordingly, Plaintiff is entitled to compensatory and consequential damages for the financial and emotional toll incurred in attempting to comply with Defendant's illegal and confusing administrative hurdles.

**COUNT III - VIOLATIONS OF NJLAD *(N.J. Stat. Ann. § 10:5-12 et seq.)***
**Defendant Discriminated Against Plaintiff and Class for Failing to Provide Reasonable Public Accommodations**

61. Plaintiff realleges and incorporates by reference all preceding paragraphs.

62. Under N.J.S.A. 10:5-12(f), it is an unlawful discriminatory practice for any owner or agent of a place of public accommodation to refuse, withhold from, or deny any person any of its accommodations, advantages, or facilities because of a disability.

63. The New Jersey Supreme Court has repeatedly emphasized that the NJLAD is a broad, remedial statute that must be liberally construed to eradicate discrimination, including on the basis of disability. See *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 16 (2002). Consistent with that mandate, courts have recognized that public accommodations must provide disabled individuals with genuine and effective access to their services. See, e.g., *Franek v. Tomahawk Lake Resort*, 333 N.J. Super. 206, 217–18 (App. Div. 2000).

64. In the digital context, this principle applies with equal force. Where a website functions as a gateway to a business's goods or services, the failure to make that website accessible denies disabled users meaningful access in violation of the NJLAD's core protections.

65. Defendant violated the NJLAD twice. First, by operating a website that barred a New Jersey resident from accessing mandatory travel forms, and second, by its agents' "bait-and-switch" conduct at Newark Liberty International Airport, where promised assistance was summarily denied.

66. Defendant's conduct toward Plaintiff was not merely an oversight but a systemic failure to accommodate. By suggesting Plaintiff rely on "neighbors," Defendant engaged in stereotypical assumptions about the helplessness of the blind, which the NJLAD was specifically designed to eradicate.

67. Accordingly, Plaintiff is entitled to compensatory damages, damages for pain and suffering, and punitive damages.

## COUNT IV - NEGLIGENT MISREPRESENTATION

68. Plaintiff realleges and incorporates by reference all preceding paragraphs.

69. Defendant, through its customer service personnel, made a material representation of fact to Plaintiff: that if he traveled to a United Airlines service desk at a regional airport, he would receive the necessary assistance to complete his service-animal registration forms.

70. This representation was false. When Plaintiff arrived at Newark Liberty International Airport, the ticketing agent informed him that such assistance was "not United's policy." Defendant either knew this representation was false at the time it was made or made it with reckless disregard for its truth.

71. Under New Jersey law, a party is liable for negligent misrepresentation when it negligently provides false information and another reasonably relies on that information to their detriment. See *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005). More recently, courts have reaffirmed that negligent misrepresentation permits recovery for purely economic loss where a defendant fails to exercise reasonable care in communicating information in a commercial context. See *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 80 (App. Div. 2005).

72. More recently, courts have continued to apply this framework, emphasizing that liability attaches where a defendant negligently supplies misleading information in a

commercial context with foreseeable reliance. See *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 310 (2002); *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 109 (2000).

73. Plaintiff's reliance on Defendant's instructions was entirely reasonable, as Defendant is the sole provider of the travel services in question and the only entity capable of processing the mandatory forms.

74. Accordingly, Plaintiff suffered *reliance damages*, including the cost of travel to the airport, lost time and wages, and the subsequent professional fees paid to a veterinarian to perform the task Defendant's agents falsely promised to handle.

## **CLASS AND INJUNCTIVE/DECLARATORY RELIEF ALLEGATIONS**

75. Plaintiff brings this action as a nationwide class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), both individually and on behalf of the Class currently defined as: all visually disabled or legally blind individuals in the United States who have attempted to access Defendants' website and have been denied access thereto during the Class Period during the last 4-years.

76. Plaintiff also seeks certification of a sub-class of all visually disabled and/or legally blind individuals in New Jersey who have attempted to access Defendant's Website and have been denied access to the Website during the last 3-years.

77. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries, and/or assigns of any such individual or entity.

78. Upon information and belief, there are hundreds of members in the Class who have suffered from Defendants' conduct complained of herein during the Class Period. Accordingly, joinder is impracticable pursuant to Fed. R. Civ. P. Rule 23(a)(1).

79. Common issues of fact or law predominate over individual issues within the

meaning of Fed. R. Civ. P. Rule 23(a)(2). Common issues of law and fact include, but are not limited to, whether:

a. the website is a place of "public accommodation" under the ADA;

b. the website is a "place or provider of public accommodation" under the NJLAD; and

c. the website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA and/or NJLAD;

80. Plaintiff's interests are typical of, and not antagonistic to the interests of, the Class and the claims arising out of Defendant's common uniform course of conduct are all based upon the same facts and legal theories.

81. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent counsel experienced with class actions and civil rights litigation who intend to vigorously prosecute this action. Plaintiff has similar legal bases for statutory and punitive damages that are sought on the behalf of members of the Class in this action. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

82. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since a multiplicity of actions could result in an unwarranted burden on the court system and could create the possibility of inconsistent judgments. Moreover, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

83. Class members' identities can be identified by Defendant's records.

84. Plaintiff reserves the right to amend the definition of the Class at any point of the litigation, especially after being provided the opportunity to review the documents and records produced in discovery.

85. It is Defendant's policy and practice to deny Plaintiff and the Class access to its website and to specifically deny the services and forms offered to the general public. Due to Defendants' failure and refusal to remove access barriers to the website, Plaintiff and the Class have been—and currently are—denied equal access to the website and the services and forms contained therein.

86. As described above, during Plaintiff's repeated visits to Defendant's website, Plaintiff encountered the access barriers set forth above that denied Plaintiff full and equal access to Defendant's website and the items sold there. These access barriers were the reason that Plaintiff was repeatedly denied the opportunity to register to travel with a seeing-eye dog.

87. Plaintiff remains expectant that the accessibility barriers will be cured expeditiously, as Plaintiff unequivocally intends to return to the website to register to travel with a seeing-eye dog. As the website is available through the internet, Plaintiff may easily return to the website and register his seeing-eye dog once the barriers to accessibility are removed.

88. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access on multiple occasions in the past, and now deter Plaintiff from visiting the website until such barriers are cured—presently and in the future. These access barriers have, on four separate occasions, deterred, and continue to deter, Plaintiff from using the website and/or registering a seeing-eye dog for travel.

89. If the website were equally accessible to all, Plaintiff and the Class could independently navigate the website and complete a desired transaction as sighted individuals do.

90. Plaintiff has actual knowledge of the access barriers that make Defendants' Website inaccessible and independently unusable by blind and visually disabled people based on repeated attempts to register to travel with a seeing-eye dog. Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and the Class equal access to the website, Plaintiff alleges that Defendants have engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

a. constructing and maintaining a website that is inaccessible to visually disabled individuals, including Plaintiff and the Class;

b. failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually disabled individuals, including Plaintiff and the Class; and

c. failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually disabled consumers (a protected class), including Plaintiff and the Class.

91. Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein. Since Defendants' website is not equally accessible—and because Defendants lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible—they must take measures to ensure future compliance.

92. Plaintiff engaged TA Legal Group PLLC to represent him and the Class in this matter and have agreed to pay them a reasonable fee for their services.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter judgment in his favor and against Defendant and grant the following relief:

-A declaratory judgment that the practices complained of herein, specifically the maintenance of an inaccessible digital interface and the refusal to provide reasonable accommodations for service-animal registration, are unlawful under the ADA, 42 U.S.C. § 12181 et seq., the ACAA, 49 U.S.C. § 41705, and the NJLAD, N.J. Stat. Ann. § 10:5-12;

-An injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, permanently restraining them from engaging in the unlawful practices, policies, and patterns set forth herein, including a mandate to remediate all digital barriers to comply with WCAG 2.1 Level AA standards;

-Certification of this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3);

-Designation of Plaintiff as the representative of the Rule 23 Class and his counsel as Class Counsel;

-An award of compensatory damages, including reimbursement for out-of-pocket professional fees, travel expenses, and administrative costs incurred as a direct result of Defendant's failure to provide accessible services;

-An award of reliance damages under the theory of negligent misrepresentation for the time, labor, and financial resources expended by Plaintiff in reliance on Defendant’s false directives;

-An award of statutory penalties where provided under the NJLAD and applicable federal regulations for Defendant's systemic failure to provide equal access to public accommodations;

-An award of damages for emotional distress, mental anguish, and humiliation resulting from the discriminatory denial of autonomy and the "bait-and-switch" treatment experienced at Defendant's service facilities;

-An award of punitive damages for Defendant's willful, malicious, and reckless disregard for the civil rights and safety of visually disabled travelers;

-An award of pre-judgment and post-judgment interest at the applicable legal rate on all monetary sums awarded;

-An award of reasonable attorneys' fees, costs, and expenses incurred in this action pursuant to 42 U.S.C. § 12205 and N.J.S.A. 10:5-27.1;

-An incentive award for the Plaintiff for his service as Class Representative in vindicating the rights of the visually disabled community; and

-Such other and further legal or equitable relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: Huntington, NY
March 26, 2026

**TA LEGAL GROUP PLLC**
*Attorneys for Plaintiff and Class*

By: ______________________________

Taimur Alamgir
Matthew Daidola
205 East Main Street, Suite 3-4
Huntington, NY 11743
Tel. (914) 552-2669
tim@talegalgroup.com